



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| KERR CORPORATION, | Case No. **1:05CV0621** |
| Plaintiff, | |
| Vs. | |
| THE FREEMAN MANUFACTURING & SUPPLY COMPANY, | Judge |
| Defendant. | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kerr Corporation, by its attorneys, for its Complaint, alleges as follows:

## THE PARTIES

1.      Plaintiff Kerr Corporation ("Kerr") is a Delaware corporation having a principal place of business at 1717 West Collins Avenue, Orange, California 92867. Kerr, among other activities, is directly engaged in the design, development, manufacture, distribution, and sale worldwide of superior quality waxes for use in the jewelry and optical professions. For over 25 years, Kerr has been a leader in these fields, and its name has become synonymous in the trade with superior quality and innovative products. Kerr was formerly known as, and is the successor-in-interest to, Kerr Manufacturing Company, Division of Sybron Corporation.

1

2.     Upon information and belief, Defendant The Freeman Manufacturing &

Supply Company ("Freeman") is an Ohio corporation having a principal place of business at

1101 Moore Road, Avon, Ohio 44011.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28

U.S.C. §§ 1331 and 1338(a) with respect to the claims arising out of the alleged violations of The

Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under 28 U.S.C. § 1338(b) and/or § 1367(a) with

respect to the claims under the state statutory and common law. The matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs. Diversity of citizenship

jurisdiction is conferred pursuant to 28 U.S.C. § 1332(a).

4.     Federal question jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331

and 1338(a), and 15 U.S.C. § 1121(a). Jurisdiction over the claims brought under state statutory

and common law is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

## BACKGROUND FACTS

5.     Commencing at least as early as 1972, Kerr became engaged in the

manufacture and sale of high quality injection waxes for use in jewelry casting applications and,

subsequently, for use in the optical industry.

6.     Since at least as early as 1972, Kerr has manufactured, advertised,

marketed, and sold a variety of different injection waxes with the different injection waxes

having different physical properties. Beginning in about 1980, Kerr began selling its injection

waxes in a unique flake product form (hereinafter the "Kerr Flake Form"), with each of the

different waxes being identified by a different, unique, and arbitrarily selected color (hereinafter

the "Kerr Color Coding Scheme"). Over the years, Kerr added new types of waxes to its line of

2

flake product form injection waxes and, by 1993, that line included seven different types of waxes sold under the names "Aqua Green," "Ruby Red," "Turquoise Green," "Flex-Plast," "NYC Pink," "Tuffy Green" and "Super Pink" (hereinafter, the names are referred to as the "Kerr Wax Names"). The line of injection waxes using Kerr Wax Names and Kerr Color Coding Scheme and the Kerr Flake Form is shown in a 1997 Kerr catalog attached as Exhibit 1. In 2004, Kerr added a new wax to its line that was colored purple and sold under the name "ACCU®Carve". The current line of Kerr Flake Form injection waxes using the Kerr Color Coding Scheme is shown in a print-out from the Kerr website (www.kerrlab.com) attached as Exhibit 2.

7.    When Kerr began selling injection waxes, those waxes were manufactured for Kerr by Freeman in a brick form and were identified by the names "Super Green," "Super Pink," and "Satin" and were in green, pink and maroon red colors, respectively. (See, e.g., Exhibit 3, Kerr Art Metalcraft Casting Catalog, 1975-1976 Edition.)

8.    In about 1977, Kerr added an "Aqua" injection wax to its line of injection waxes, again in brick form and again manufactured by Freeman. (See Exhibit 4, Kerr Art Metalcraft Casting Catalog, 1977-1978 Edition.)

9.    In about 1978, Kerr eliminated the "Satin" injection waxes and had Freeman manufacture for it injection waxes sold under the names "Aqua Green," "Ruby Red" and "Turquoise Blue." Kerr also had Freeman manufacture for it a green flake form "Blend-It" wax for users to add to Kerr's other injection wax products for customizing the properties of the wax. (See Exhibit 5, Kerr Art Metalcraft Casting Catalog, 1978-1979 Edition.)

10.    In about 1979, Kerr added a "Tuffy Green" wax to its line of injection waxes, which was manufactured for Kerr by Freeman. (See Exhibit 6, Kerr Art Metalcraft Casting Catalog, 1979-1980 Edition.)

3

11.     Then in about 1980, Kerr began having Freeman manufacture the injection waxes in the Kerr Flake Form.  Its line of Kerr Flake Form injection waxes included the waxes sold under the names "Aqua Green," "Ruby Red," "Turquoise Blue," and "Tuffy Green."  At the time, Kerr was still having Freeman manufacture its "Super Green" and "Super Pink" injection waxes in brick form.  (See Exhibit 7, 1980-1981 Kerr Art Metalcraft Casting Catalog.)

12.     By about 1982, Kerr had Freeman manufacture all of its injection waxes in the Kerr Flake Form, which were sold under the names "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green."  (See Exhibit 8, Kerr Art Metalcraft Casting Catalog, 1982-1983 Edition.)

13.     In 1984, Kerr and Freeman negotiated a Development Agreement that was entered into on September 1, 1984, a copy of which is attached as Exhibit 9, whereby Freeman was to provide assistance to Kerr in developing processes and equipment for the manufacture of waxes, referred to as "Wax Technology," for use by Kerr in manufacturing wax products. (Exhibit 9, Development Agreement at page 1.)

14.     Under the Development Agreement, Freeman agreed

to use its best efforts to provide design, development and consultation services to KERR as described in projects to be proposed by KERR of and relating to the development of Wax Technology.

(Exhibit 9, Development Agreement at ¶ 1.)

15.     Freeman also agreed

that all information concerning this [Development] Agreement and work performed hereunder, whether received from KERR or developed by FREEMAN under this [Development] Agreement, including, but not limited to, designs, formulations, product specifications, marketing information, customer lists and the like, will be maintained in confidence by FREEMAN . . . .

4

(Exhibit 9, Development Agreement at ¶ 3.)

> 16.  Freeman further agreed that
>
> [a]ll know-how, inventions, improvements or discoveries,
> patentable or otherwise, if any, arising out of work performed
> under this [Development] Agreement (collectively "New
> Technology") shall be the exclusive property of KERR.
> FREEMAN agrees to make prompt and full disclosure of any such
> know-how, inventions, improvements and discoveries, if any, to
> KERR; . . .

(Exhibit 9, Development Agreement at ¶ 4(a).)  As part of its agreement that Kerr would be the

owner of any New Technology, Freeman also agreed

> that it will not utilize or apply any New Technology for its own
> purposes or for the benefit of any third party, including, but not
> limited to, the manufacture of any product, without KERR's prior
> written consent.

(Exhibit 9, Development Agreement at ¶ 4(d).)

> 17.  The obligations of Freeman under paragraphs 3 and 4(a) of the

Development Agreement are not discharged by termination of that agreement, including

Freeman's obligations to surrender New Technology to Kerr.  (Exhibit 9, Development

Agreement at ¶ 6.)

> 18.  In exchange for obtaining the New Technology developed by Freeman

under the Development Agreement, Kerr agreed to pay Freeman a monthly $2,943 consulting

fee.  (Exhibit 9, Development Agreement at ¶ 2.)  In November of 1991, Kerr and Freeman

amended ¶ 2 of the Development Agreement to provide that Kerr would pay a monthly $1,000

retainer plus $100.00 per hour for Freeman "personnel time utilized on Wax Technology

Development at the request of Kerr."  (Exhibit 10, Amendment to Development Agreement.)

Since September of 1984, Kerr has paid to Freeman over $380,000 under the Development Agreement.

19. Under the terms of the Development Agreement, Freeman has developed, modified and/or improved a number of wax products at the request of Kerr.

20. In late 1984, Kerr introduced its "NYC Pink" injection wax, which, on information and belief, was developed by Freeman at the request of Kerr under the Development Agreement. (See Exhibit 11, 1984-1985 Kerr Art Metalcraft Casting Catalog.)

21. In 1985, Kerr requested that Freeman develop an optical soluble wax, which is a wax used in the manufacture of intraocular lenses. For example, as shown in a December 5, 1985, Monthly Report (Exhibit 12), Freeman reported that three 5-pound samples of the optical soluble wax were prepared for Kerr's evaluation in November of 1985. Kerr sells that product under the designation "Optical Soluble Wax # 18423," and that product is one of Kerr's top-selling wax products. (See Exhibit 13, Kerr LAB2001 Price Book, effective October 1, 2000, at page 83.)

22. Also in 1985, Kerr had Freeman undertake work on developing dental waxes, inlay dental waxes and sticky wax. (Exhibit 14, April 3, 1985 letter enclosing February and March monthly reports; see also Exhibit 15, December 5, 1985 Monthly Report.)

23. In 1987, Kerr and Freeman entered into a Distributorship Agreement under which Freeman could manufacture jewelry waxes solely for Kerr "in accordance to mutually agreed upon specifications" (defined as "Products"), and which Products were to "be sold under the Kerr brand". (Exhibit 16, Distributorship Agreement at ¶¶ 1-3.)

24. In 1988, Kerr requested that Freeman duplicate a competitor's product that was sold under the name Plast-O-Wax. (See Exhibit 17, December 7, 1988 letter enclosing

6

October and November Monthly Reports.) That project culminated in Kerr's "Flex-Plast" injection wax. (Exhibit 18, Kerr January 1, 1993 Suggested Products Price List; Exhibit 19, 1995 Kerr Lost Wax Casting Catalog.)

  25. In 1997, Kerr requested that Freeman develop a wax that would be sold in a bead form. (Exhibit 18, November 7, 1997 letter from Letty D. Cilindro.) That wax product line was sold by Kerr under the name "Pearls". (See Exhibit 1, 1998 Kerr product brochure.)

  26. In April of 1998, Kerr requested that Freeman develop a "carvable" injection flake form wax. (Exhibit 20, April 3, 1998, letter.) That project culminated in a product launched by Kerr in 2004 under the name "ACCU®Carve", which has quickly become one of Kerr's most popular wax products. (See Exhibit 21, Kerr Jewelry 2004 Catalog; Exhibit 22, 2004 Kerr brochure, "Change Is Good".)

  27. On information and belief, after execution of the Development Agreement and at Kerr's request, Freeman also modified and made improvements to the formulas/processes for the "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green" flake product form waxes sold by Kerr.

  28. In 2003 and 2004, Kerr and Freeman had a number of disputes regarding operation of the Distributorship Agreement, and each party alleged that the other had breached the Distributorship Agreement. In September of 2004, the parties entered into an Agreement resolving their dispute with respect to the Distributorship Agreement and terminating the Distributorship Agreement as of February 1, 2005. (Exhibit 23, Agreement at ¶ 4.)

  29. Kerr has paid the monthly fees due under the Development Agreement. However, starting in about March of 2004 and thereafter, Freeman has refused to accept Kerr's payments under that agreement and has returned Kerr's payments.

7

30.     Kerr has fully complied with all of the terms conditions and obligations under the Development Agreement, and the Development Agreement remains in full force and effect.

31.     Kerr has been manufacturing, advertising, marketing, and selling injection waxes using the Kerr Color Coding Scheme, the Kerr Wax Names and the Kerr Flake Form continuously since at least 1980. In the period since approximately 1988, Kerr's gross sales of injection waxes using the Kerr Color Coding Scheme, the Kerr Wax Names and the Kerr Flake Form are in excess of $40,000,000, which represents sales at retail in excess of $60,000,000. During that same period, Kerr has expended over $600,000 in advertising of the Kerr Color Coding Scheme, the Kerr Wax Names and the Kerr Flake Form through trade publications, trade shows, trade sheets, the Internet, catalogs and samples. Examples of Kerr's advertising are attached as Exhibits 24-35, which are copies of advertisements between 1980 and 1993 taken out by Kerr in American Jewelry Manufacturer, a leading trade publication in the jewelry industry.

32.     Kerr sells its line of injection waxes to distributors who sometimes repackage them for sale to end users, and other times resell them directly to end users. Kerr also advertises its line of injection waxes using the Kerr Color Coding Scheme, the Kerr Wax Names and the Kerr Flake Form to both distributors and end users. Kerr's injection waxes are distributed throughout virtually the entire United States and in foreign countries and have been so distributed for at least 25 years.

33.     Kerr developed more than 25 years ago and has continuously used the unique and distinctive Kerr Color Coding Scheme, Kerr Wax Names and Kerr Flake Form in connection and association with the advertising, marketing, distribution, and sale of Kerr injection waxes, and the Kerr Color Coding Scheme, Kerr Wax Names and Kerr Flake Form are

8

original and fanciful symbols and marks representing this line of Kerr injection waxes as emanating from a distinct source, *i.e.*, Kerr.

34. The Kerr Color Coding Scheme, Kerr Wax Names and Kerr Flake Form are inherently distinctive, original, arbitrary, and fanciful trademarks and trade dress for this line of Kerr injection waxes.

35. Kerr has also prominently used the word "Flakes" in connection with the advertising and marketing of its distinctive flake form waxes, and has obtained United States Registration No. 2,422,329 on the word "Flakes" for injection wax for solid mold, investment and lost wax casting uses (hereinafter "Flakes Registration"). A copy of a printout the Flakes Registration from the United States Patent and Trademark Office's Trademark Electronic Search System is attached as Exhibit 36. Kerr has continuously used the "Flakes" trademark in connection with advertisement and sale of the Kerr Flake Form waxes as shown by the attached 1998 product brochure (Exhibit 37), the 1999 Dealer Price List (Exhibit 38), the 2000 Retail Price List (Exhibit 39) and the 2001 Price Book (Exhibit 13).

36. As a result of Kerr's extensive and widespread advertising and sale of waxes using the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark, and their distribution throughout the United States and abroad over a period of in excess of 25 years, Kerr has established valuable goodwill, public recognition, and secondary meaning in the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark in the United States, the State of Ohio, and abroad.

37. Kerr designed, developed, and has promoted the Kerr Color Coding Scheme, Kerr Wax Names and Kerr Flake Form to be distinctive and different from the colors, names and shape of waxes sold by any other company. The distinctive trademarks and trade

9

dress in the Kerr Color Coding Scheme, Kerr Wax Names and Kerr Flake Form clearly and unambiguously differentiate Kerr's products from other companies' products and indicate Kerr as the sole source of origin for all products under those trademarks and trade dress.

38.     The Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark allow purchasers to recognize, identify, and distinguish Kerr's line of injection waxes as products emanating from a distinct source, namely, Kerr.

39.     The Kerr Color Coding Scheme and Kerr Flake Form are non-functional and set this line of Kerr injection waxes apart from other products in the marketplace.  The unique and inherently distinctive shape and color coding scheme of the Kerr injection waxes are not essential to the use or purpose of the product nor do they affect its cost or quality.  Rather, the Kerr Color Coding Scheme and Kerr Flake Form are distinctive and serve to identify the source of the Kerr injection waxes.

40.     As a result of the widespread advertising, promotion, and sale of Kerr's line of injection waxes, the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark have become well known and identified in the minds of the trade and purchasing public as identifying Kerr's line of injection waxes.  The Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark have come to have a secondary meaning in the minds of the relevant trade and consumers indicating the origin of the Kerr line of injection waxes with Kerr and have come to be a business asset of great value to Kerr.

41.     Kerr has established a reputation as being a leader in providing high quality injection wax products for the jewelry trade that it has developed over the course of the more than 25 years that it has been selling superior injection wax products.

10

## DEFENDANT'S ACTIVITIES

42.     In or about February of 2005, Freeman began marketing and selling to the jewelry trade a line of injection waxes using the Kerr Color Coding Scheme, using the Kerr Wax Names, using the Kerr Flake Form, using the "Flakes" trademark and using the formulas developed, modified and/or improved by Freeman for Kerr under the Development Agreement. When Kerr requested that Freeman provide to Kerr the formulas for the injection waxes and other waxes that were developed, modified and/or improved by Freeman under the Development Agreement, Freeman refused to do so. As of the date of this Complaint, Freeman has yet to provide any disclosure, much less full disclosure, to Kerr of the know-how, inventions, improvements and discoveries under the Development Agreement.

43.     As a result of Freeman's refusal to provide to Kerr the disclosure required under the Development Agreement, and with the termination of the Distributorship Agreement, Kerr has been required to obtain its wax products from a source other than Freeman. Without the disclosure from Freeman, Kerr has been forced to seek to reverse engineer the formulas for the wax products that are the property of Kerr under the Development Agreement, but which Freeman has refused to provide to Kerr. Although Kerr has been able to derive formulas providing waxes having the same properties as those that were purchased from Freeman, they are not believed to have the identical formulations.

44.     Freeman is operating an Internet website, www.freemanwax.com, on which Freeman is advertising its injection waxes. As shown by a printout from that website attached as Exhibit 40, Freeman is using the "Flakes" trademark, the identical colors and identical names in connection with waxes identified as having the identical properties as the

11

waxes of Kerr sold under the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark.

45.     Freeman has also taken out an advertisement in the February 2005 issue of American Jewelry Manufacturer that advertises its injection waxes using the "Flakes" trademark and the identical colors and identical names as waxes of Kerr sold under the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and "Flakes" trademark. A Kerr advertisement for its carvable wax appears four pages earlier in the same magazine. (See Exhibit 41, February 2005 issue of American Jewelry Manufacturer.)

46.     Upon information and belief, Freeman is using the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and Kerr's "Flakes" trademark with the intention of causing the trade and members of the purchasing public to believe that Freeman's products are provided by, authorized by, licensed by, or otherwise associated with Kerr and are intended to, and are likely to cause, confusion, mistake, or deception as to the affiliation, connection, or association of Freeman with Kerr and/or as to the origin, sponsorship, or approval of the Freeman's injection waxes.

47.     Upon information and belief, Freeman is using the Kerr Color Coding Scheme, Kerr Wax Names, Kerr Flake Form and Kerr's "Flakes" trademark as part of a willful and intentional plan and course of action in which Freeman seeks to trade upon or otherwise benefit from Kerr's trademarks and trade dress for purposes of riding on the coattails of the highly successful line of Kerr injection waxes.

48.     As with Kerr's injection waxes, Freeman sells its injection waxes to distributors who repackage them for sale to end users, as well as for resale directly to end users. Because Freeman's injection waxes are visually identical to Kerr's injection waxes, and are made

12

using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the "Flakes" trademark, end users will be unable to visually distinguish between the products of Kerr and Freeman.

49.     Even where the injection waxes are sold directly to end users, or are re-sold to end users without repackaging, jewelers typically place their injection waxes in a new container. Because of Kerr's continuous advertising and sale of its injection waxes using the Kerr Color Coding Scheme and the Kerr Flake Form, end users have come to expect that waxes having that appearance are products emanating from Kerr. End users, however, will be unable to visually distinguish between the products of Kerr and Freeman.

50.     As a result of Freeman's use of the Kerr Color Coding Scheme, the Kerr Flake Form, the Kerr Wax Names and the Kerr "Flakes" trademark, distributors, jewelers and other users of Freeman's injection waxes will be confused into thinking that the Freeman injection waxes are those of Kerr, or are otherwise authorized or approved by Kerr.

51.     Kerr has no control over the quality of the waxes being sold by Freeman using the Kerr Color Coding Scheme, the Kerr Flake Form, the Kerr Wax Names or the Kerr "Flakes" trademark. Because of the confusion that will be caused by Freeman's use of the Kerr Color Coding Scheme, the Kerr Flake Form, the Kerr Wax Names and the Kerr "Flakes" trademark, consumers will believe that quality problems with Freeman's injection waxes are those of Kerr's injection waxes. Kerr's reputation for high quality products will be irreparably harmed if Freeman is permitted to sell injection waxes using the Kerr Color Coding Scheme, the Kerr Flake Form, the Kerr Wax Names or the Kerr "Flakes" trademark and Kerr "Flakes" trademark.

13

52.     Freeman has also sent out announcements to distributors and other members of the trade falsely asserting, among other things, that the injection waxes developed for Kerr under the Development Agreement are the property of Freeman (see Exhibit 42) and that "[t]he eight flake wax formulations that were sold [by Kerr] under the ACCU®-Flakes brand name through January, 2005 are now manufactured and sold exclusively under the Freeman Flakes™ brand name" (see Exhibit 43), and that "Freeman has **not** sold or licensed its formulas or manufacturing processes to Kerr Corporation" (see Exhibit 44). These false statements are also irreparably damaging Kerr's hard-earned reputation of being a leader and innovator in the injection wax industry.

53.     Kerr and Freeman also advertise their respective products in the same media. Both advertise in the American Jewelry Manufacturer (see Exhibit 41), both advertise on their respective Internet websites (see Exhibits 2 and 40), and both attend the major jewelry trade shows (see Exhibits 45 and 46, pages from the Kerr and Freeman Internet websites, respectively).

## COUNT I
## FALSE DESIGNATION OF ORIGIN AND UNFAIR
## COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)

54.     The allegations of paragraphs 1-53 are incorporated by reference as if fully set out herein.

55.     This claim arises under the Trademark Act of 1946, 15 U.S.C. §1051 *et seq.*, particularly 15 U.S.C. §1125(a), and alleges use of false designations of origin, and false descriptions and misrepresentations.

56.     The advertising, promotion, offer for sale, and sale by Freeman of injection waxes using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake

14

Form and the Kerr "Flakes" trademark (a) constitutes the use of false designations of origin and tends falsely to represent or designate the source of Freeman's products as being affiliated with, connected with, or associated with Kerr and tends falsely to represent or designate that Freeman's products originate with, are sponsored or approved by, or are otherwise connected with Kerr when in fact Freeman is neither connected with nor authorized by Kerr, and (b) are likely to cause confusion or mistake or deceive the trade and users as to the origin, sponsorship, association, or approval of Freeman's injection wax products.

57. By using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and/or the Kerr "Flakes" trademark, Freeman misrepresents and falsely describes to the general public the origin and source of Freeman's product and creates a likelihood of confusion in the trade and the ultimate purchasers as to the source of Freeman's injection wax products.

58. The acts of Freeman complained of herein have been without the authorization or consent of Kerr and have damaged, are damaging, and are likely to continue to damage Kerr.

59. The acts of Freeman complained of herein constitute a violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

60. By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## COUNT II
## TRADEMARK AND TRADE DRESS
## INFRINGEMENT IN VIOLATION OF 15 U.S.C. §1125(a)

61.     The allegations of paragraphs 1-60 are incorporated by reference as if fully set out herein.

62.     This claim arises under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, particularly 15 U.S.C. § 1125(a), and alleges use of false designations of origin, and false descriptions and misrepresentations.

63.     As a result of the extensive sales, advertising, and promotion of Kerr's line of injection waxes using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and/or the "Flakes" trademark, each of the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the "Flakes" trademark has come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with Kerr, and the trade and purchasing public is likely to attribute the use by Freeman of each of the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the "Flakes" trademark as a source of origin, authorization, and/or sponsorship of defendant's products and to buy Freeman's products in that erroneous belief.

64.     The use by Freeman of each of the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the "Flakes" trademark has been, is, and continues to be, likely to cause confusion or mistake and to deceive purchasers.

65.     Upon information and belief, Freeman has intentionally appropriated the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the Kerr "Flakes" trademark for the purpose of causing confusion, mistake, and deception among the trade and

16

consumers as to the source of Freeman's products and with the intention of passing off its products as those of Kerr or as authorized or sponsored by Kerr.

66.     The acts of Freeman complained of herein have been without the authorization or consent of Kerr and have damaged, are damaging, and are likely to continue to damage Kerr.

67.     The acts of Freeman complained of herein constitute a violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

68.     By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

**COUNT III**
**FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)**

69.     The allegations of paragraphs 1-68 are incorporated by reference as if fully set out herein.

70.     This claim arises under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, particularly 15 U.S.C. § 1125(a), and alleges false or misleading descriptions of fact or false or misleading representations of fact.

71.     Freeman's statements in its announcements to distributors and other members of the trade stating that the injection waxes developed for Kerr under the Development Agreement are the property of Freeman (see Exhibit 42) and that "[t]he eight flake wax formulations that were sold [by Kerr] under the ACCU®-Flakes brand name through January, 2005 are now manufactured and sold exclusively under the Freeman Flakes™ brand name" (see

17

Exhibit 43), and that "Freeman has **not** sold or licensed its formulas or manufacturing processes to Kerr Corporation" (see Exhibit 44) are false descriptions or representations of fact regarding the characteristics and qualities of Freeman's injection waxes and Kerr's injection waxes, and misrepresent that Freeman is the owner of the formulas for the injection waxes sold by Kerr, which are the property of Kerr under the Development Agreement.

72.     The acts of Freeman complained of herein have damaged, are damaging, and are likely to continue to damage Kerr.

73.     The acts of Freeman complained of herein constitute a violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

74.     By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

**COUNT IV**
**VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT**

75.     The allegations of paragraphs 1-74 are incorporated by reference as though fully set forth herein.

76.     This claim arises under the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq.*

77.     Freeman, by its conduct, has intentionally, willfully, and in bad faith appropriated each of the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the Kerr "Flakes" trademark. The actions of Freeman were intended to pass off Freeman's injection waxes as those of Kerr, to cause confusion or misunderstanding as to the source,

18

sponsorship, or approval of Freeman's injection waxes, to cause confusion or misunderstanding of the relevant consumers as to the affiliation, connection, or association of Freeman or its injection waxes with Kerr, and to misrepresent the qualities or characteristics of the injection waxes of Kerr and Freeman all in violation of O.R.C. § 4165.02.

78.     Upon information and belief, Freeman has willfully engaged in the conduct complained of herein knowing the same to be deceptive.

79.     The acts of Freeman complained of herein have caused Kerr to suffer monetary damages in an amount thus far not determined.

80.     By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## COUNT V
## BREACH OF DEVELOPMENT AGREEMENT

81.     The allegations of paragraphs 1-80 are incorporated by reference as if fully set out herein.

82.     This claim is for breach of the Development Agreement.

83.     Under the Development Agreement, all know-how, inventions, improvements or discoveries, patentable or unpatentable, arising out of work performed under the Development Agreement by Freeman (which is referred to as "New Technology") are the exclusive property of Kerr, and Freeman was required to provide full disclosure to Kerr of all such know-how, improvements and discoveries. (Exhibit 9, Development Agreement at ¶ 4(a).)

84.     Pursuant to Paragraph 1 of the Development Agreement, Kerr requested that Freeman develop, modify and/or improve at least the following products (which constitute "Wax Technology" under the Development Agreement): NYC Pink, Optical Soluble Wax

19

#18423, dental waxes, inlay dental waxes, sticky wax, Flex-Plast, Pearls and ACCU®Carve (see paragraphs 20-22 and 24-26, above). On information and belief, after execution of the Development Agreement and under the terms thereof, Freeman also modified or improved, at Kerr's request, the formulas of the "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green" flake product form waxes sold by Kerr.

85.     Pursuant to Paragraph 4(a) of the Development Agreement, all of know-how, inventions, improvements or discoveries arising out of Freeman's work in connection with the above products is the exclusive property of Kerr, and Freeman was required to fully disclose to Kerr all of the know-how, inventions, improvements.

86.     Freeman has failed and refuses to provide to Kerr the full disclosure of the know-how, inventions, improvements arising out of Freeman's work in connection the above products in breach of Paragraph 4(a) of the Development Agreement.

87.     Freeman has also utilized and applied, for its own purposes, the New Technology developed for Kerr under the Development Agreement by manufacturing injection waxes using the New Technology, including, without limitation, the New Technology embodied in the waxes sold by Kerr under the names "Flex-Plast" and "ACCU®Carve," all without Kerr's prior written consent and in breach of Paragraph 4(d) of the Development Agreement.

88.     Kerr has at all times fully complied with all terms, conditions and obligations under the Development Agreement.

89.     The acts of Freeman complained of herein constitute a breach of the Development Agreement, have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

90.     By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

### COUNT VI
### MISAPPROPRIATION

91.     The allegations of paragraphs 1-90 are incorporated by reference as if fully set out herein.

92.     This claim is for misappropriation.

93.     Pursuant to Paragraph 1 of the Development Agreement, Kerr requested that Freeman develop, modify and/or improve at least the following products (which constitute "Wax Technology" under the Development Agreement): NYC Pink, Optical Soluble Wax #18423, dental waxes, inlay dental waxes, sticky wax, Flex-Plast, Pearls and ACCU®Carve (see paragraphs 20-22 and 24-26, above).  On information and belief, after execution of the Development Agreement and under the terms thereof, Freeman also modified or improved, at Kerr's request, the formulas of the "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green" flake product form waxes sold by Kerr.  Pursuant to Paragraph 4(a) of the Development Agreement, all of know-how, inventions, improvements or discoveries arising out of Freeman's work in connection with the above products is the exclusive property of Kerr.

94.     Freeman has misappropriated Kerr's property by failing and refusing to disclose to Kerr, and by using for its own benefit, the know-how, inventions, improvements or discoveries arising out of Freeman's work in connection with the above products.

21

95.     The acts of Freeman complained of herein have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

96.     By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## COUNT VII
## CONVERSION

97.     The allegations of paragraphs 1-96 are incorporated by reference as if fully set out herein.

98.     This claim is for conversion.

99.     Pursuant to Paragraph 1 of the Development Agreement, Kerr requested that Freeman develop, modify and/or improve at least the following products (which constitute "Wax Technology" under the Development Agreement): NYC Pink, Optical Soluble Wax #18423, dental waxes, inlay dental waxes, sticky wax, Flex-Plast, Pearls and ACCU®Carve (see paragraphs 20-22 and 24-26, above). On information and belief, after execution of the Development Agreement and under the terms thereof, Freeman also modified or improved, at Kerr's request, the formulas of the "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green" flake product form waxes sold by Kerr. Pursuant to Paragraph 4(a) of the Development Agreement, all of know-how, inventions, improvements or discoveries arising out of Freeman's work in connection with the above products is the exclusive property of Kerr.

100.     Freeman has converted Kerr's property by failing and refusing to disclose to Kerr, and by using for its own benefit, the know-how, inventions, improvements or

22

Case: 1:05-cv-00621-DSP Doc #: 1 Filed: 02/23/05 23 of 30. PageID #: 23

discoveries arising out of Freeman's work in connection with the above products and using it in the production of injection waxes sold by Freeman.

        101. The acts of Freeman complained of herein have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

        102. By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## COUNT VIII
## UNJUST ENRICHMENT

        103. The allegations of paragraphs 1-102 are incorporated by reference as if fully set out herein.

        104. This claim is for unjust enrichment.

        105. Pursuant to Paragraph 1 of the Development Agreement, Kerr requested that Freeman develop, modify and/or improve at least the following products (which constitute "Wax Technology" under the Development Agreement): NYC Pink, Optical Soluble Wax #18423, dental waxes, inlay dental waxes, sticky wax, Flex-Plast, Pearls and ACCU®Carve (see paragraphs 20-22 and 24-26, above). On information and belief, after execution of the Development Agreement and under the terms thereof, Freeman also modified or improved, at Kerr's request, the formulas of the "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink" and "Tuffy Green" flake product form waxes sold by Kerr. Pursuant to Paragraph 4(a) of the Development Agreement, all of know-how, inventions, improvements or discoveries arising out of Freeman's work in connection with the above products is the exclusive property of Kerr.

23

106. Freeman had the obligation to fully disclose all of the know-how, inventions, improvements developed under the Development Agreement, but has refused to do so as required by Paragraph 4(a) of the Development Agreement and, thus, breached its obligation. Freeman has possession of Kerr's property, has used that property in the manufacture and sale of injection waxes, and has derived, and is deriving, substantial benefit therefrom. As a result, Freeman has received and retained money and benefits which in justice and equity belong to Kerr, and Freeman has been unjustly enriched as a result thereof.

107. The acts of Freeman complained of herein have caused irreparable harm and damage to Kerr for which there is no adequate remedy at law, and have caused Kerr to suffer monetary damages in an amount thus far not determined.

108. By reason of the acts of Freeman alleged herein, Kerr has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

WHEREFORE, Kerr Corporation prays:

A. That this Court enter a decree holding that that Defendant The Freeman Manufacturing & Supply Company has infringed the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and the Kerr "Flakes" trademark, has falsely designated the origin of its products, has made false statements and representations, has violated the Ohio Deceptive Trade Practices Act, has breached the Development Agreement, misappropriated and converted the property of Kerr Corporation, and has been unjustly enriched; and that Defendant The Freeman Manufacturing & Supply Company is liable to Kerr Corporation for unfair competition, false designation of origin, and false description and misrepresentation under §43(a) of the

24

Lanham Act; for violation of the Ohio Deceptive Trade Practices Act; for breach of the Development Agreement; for misappropriating and converting the property of Kerr Corporation; and for unjust enrichment.

        B.      That Defendant The Freeman Manufacturing & Supply Company, its parents, subsidiaries, shareholders, officers, agents, employees, sales representatives, distributors, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or participation with or under authority of any or all of them, be enjoined and restrained preliminarily during the pendency of this action, and thereafter permanently, from

        i)      utilizing or applying any New Technology, as that term is defined in the Development Agreement, for their own purposes or for the benefit of any third party, including, but not limited to, the manufacture of any product including, without limitation, the formulas or processes for the wax products sold by Kerr Corporation under the names "Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink," "Tuffy Green," "NYC Pink," "Flex-Plast," "ACCU®Carve," "Optical Soluble Wax" and "Pearls."

        ii)      using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and/or the Kerr "Flakes" trademark in connection with the promotion, advertising, sale and/or offer for sale of waxes;

        iii)      passing off or attempting to pass off, induce or enable others to sell or pass off any product of Defendant The Freeman Manufacturing & Supply Company as a product authorized by Kerr Corporation, which is not authorized by Kerr Corporation;

        iv)      using the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form, the Kerr "Flakes" trademark or any other design, trademark, or trade dress which is confusingly similar thereto;

v)     using, selling, offering for sale, displaying, promoting, advertising, marketing, distributing, and/or reproducing wax products in association or connection with the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form, the Kerr "Flakes" trademark or any other trademark or trade dress which simulates, imitates, is confusingly similar to, or is likely to be confused with, the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form, the Kerr "Flakes" trademark, or which deceives, tends to deceive, falsely describes, tends to falsely describe, misrepresents its source, and/or otherwise creates confusion as to the source or origin of such goods;

vi)     falsely representing itself as being connected with Kerr or sponsored by or associated with Kerr Corporation or engaging in any act which is likely to falsely cause the trade, distributors, retailers, users, or other members of the purchasing public to believe that defendant or any of its products is associated with Kerr Corporation;

vii)     representing in advertising that the wax formulations developed under the Development Agreement are those of Freeman or that the wax products of those formulations are sold exclusively by Freeman;

viii)     otherwise unfairly competing with Kerr;

ix)     aiding, abetting, or in any way assisting any other person in engaging in or performing any of the activities referred to in paragraphs B(i)-(viii), above.

C.     That Defendant The Freeman Manufacturing & Supply Company be ordered to immediately provide to Kerr Corporation full disclosure of all know-how, inventions, improvements and discoveries under the Development Agreement including, without limitation, the formulas and processes for the wax products sold by Kerr Corporation under the names

26

"Aqua Green," "Ruby Red," "Turquoise Blue," "Super Green," "Super Pink," "Tuffy Green,"
"NYC Pink," "Flex-Plast," "ACCU®Carve," "Optical Soluble Wax" and "Pearls."

        D.     An order directing Defendant The Freeman Manufacturing & Supply
Company, its parents, subsidiaries, shareholders, officers, agents, employees, sales
representatives, distributors, successors and assigns, and any and all persons or entities acting at,
through, under or in active concert or participation with or under authority of any or all of them
who receive actual notice thereof to:

        i)     deliver up for destruction all products, articles, packaging, labels,
advertising, and promotional materials in their possession or under their control which bear or
incorporate the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr Flake Form and/or
the Kerr "Flakes" trademark, or which otherwise are an infringement, copy, simulation,
reproduction, or imitation of the Kerr Color Coding Scheme, the Kerr Wax Names, the Kerr
Flake Form and/or the Kerr "Flakes" trademark and all means of making the same; and

        ii)     send written notification to all of its wholesale customers,
distributors, and resale customers for its products marketed utilizing the Kerr Color Coding
Scheme, the Kerr Wax Names, the Kerr Flake Form and/or the Kerr "Flakes" trademark
complained of herein advising of the entry of relief awarded herein and requesting that all unsold
inventory be returned to defendant for destruction.

        E.     An order directing Defendant The Freeman Manufacturing & Supply
Company to file with this Court and serve on Kerr Corporation within thirty (30) days after the
service of such order a report in writing under oath setting forth in detail the manner in which
Defendant The Freeman Manufacturing & Supply Company has complied with the provisions of
Paragraphs B-D.

F.      An accounting of all profits realized by Defendant The Freeman Manufacturing & Supply Company as a consequence of its unlawful acts and infringements alleged herein.

G.      Damages in the full amount Kerr Corporation has sustained as a consequence of the wrongful acts of Defendant The Freeman Manufacturing & Supply Company together with any and all profits of Defendant The Freeman Manufacturing & Supply Company which are attributable to or arise out of or from such wrongful acts and infringements, such damages to be trebled pursuant to 15 U.S.C. § 1117(a) as a result of the willful conduct of Defendant The Freeman Manufacturing & Supply Company.

H.      Punitive damages for the willful and wanton acts of misappropriation, conversion and unjust enrichment.

I.      That this is an exceptional (within the meaning of 15 U.S.C. § 1117(a)), willful, and flagrant case and that Kerr Corporation be awarded the cost of this action and reasonable attorneys' fees.

J.      Such other and further relief as the Court may deem just and equitable in the circumstances.

28

## JURY DEMAND

Plaintiff Kerr Corporation hereby demands and requests trial by jury of all issues

raised that are triable by jury.

Respectfully submitted,

KERR CORPORATION

Dated:  February 22, 2005

J. Robert Chambers (0003942)
bchambers@whepatent.com
Theodore R. Remaklus (0061557)
tremaklus@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower
441 Vine Street
Cincinnati, Ohio 45202-2917
Telephone:  (513) 241-2324
Facsimile:  (513) 421-7269

## VERIFICATION

I hereby declare under penalty of perjury that I am Sales and Marketing Manager of KerrLab, a division of Kerr Corporation, and have the authority necessary to execute this verification; that I have personal knowledge that the statements set forth in this VERIFIED COMPLAINT are true; that the statements made on information and belief are believed to be true; and that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated:____2/22/05____          By:_____
                                        Greg Rome

30